(March 29, 2011)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HANS ALEXANDER, Appellant. [920 NYS2d 47]—

By indictment dated November 29, 2006, defendant was charged with criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance in or near school grounds. By motion dated December 28, 2007, defendant moved pro se to dismiss the indictment, asserting, among other things, that the 13-month-and-five-day delay resulted in a denial of his right to a speedy trial "as guaranteed by section 30.30 (1) (a) of the criminal procedure law and the sixth amendment of the United States constitution." Defendant also filed a writ of habeas corpus with this Court, asserting that the indictment was improper because of the prosecutor's failure to charge the grand jury on the defense of agency.

At a January 11, 2008 appearance, the court advised the parties, who were ready for trial, that it had just learned that this Court had granted defendant's writ [to the extent of transferring it to Bronx County for resolution] and that the trial would have to be adjourned to March to allow the People to respond. After numerous pauses and consultation with counsel, defendant pleaded guilty to a lesser charge, conditioned on the withdrawal of all outstanding writs and motions and the waiver of his right to appeal. Defendant also executed a written waiver of appeal which expressly reserved several fundamental rights, including his right to appeal "any constitutional speedy trial claim which [he] may have advanced."

On January 17, 2008, defendant moved pro se to withdraw his guilty plea on several grounds, including that counsel was ineffective because he failed to inform him that the writ had been granted and that the plea was inherently coercive because it was conditioned on the withdrawal of his speedy trial claim. After conducting a hearing, at which defendant and counsel testified and the grand jury minutes, which showed that an agency charge had been given, were admitted into evidence, the

court denied the motion. In finding that defendant had knowingly, intelligently, and voluntarily pleaded guilty, the court noted that defendant's motions and writs demonstrated his understanding of the process and that there were serious inconsistencies between defendant's testimony and the plea minutes, which established defendant's knowledge that the writ had been granted and that the plea was conditioned on its withdrawal. The court also stated that it is "perfectly proper" for a court to require that writs and motions be withdrawn before taking a plea.

Defendant now seeks to vacate his guilty plea on the ground that it was unlawfully conditioned on the withdrawal of his constitutional speedy trial motion in violation of the rule set forth in *People v Blakley* (34 NY2d 311 [1974]) and reaffirmed in *People v Callahan* (80 NY2d 273, 279-282 [1992]). For the reasons set forth below, we find that this case does not fall within the ambit of *Blakley* and *Callahan* and that the conviction should be affirmed.

Our analysis begins with *People v White* (32 NY2d 393 [1973]). In *White*, the defendant moved to dismiss his indictment on the ground that his right to a speedy trial had been denied by a 51-month delay. Before the motion was decided, defendant agreed to plead guilty to a lesser charge. Employing a case specific analysis, the Court of Appeals, characterizing the prosecutor's conduct as "unfair and over-reaching," found the defendant's waiver of his constitutional speedy trial claim invalid because the prosecutor used coercion and duress to obtain the waiver and the defendant's guilty plea on a lesser crime. (*Id.* at 400.) In contrast, an analysis of the record before us establishes that defendant's plea, including his waiver of all pending motions and writs, was not coerced in any manner.

First, the plea minutes indicate that even though the speedy trial motion remained outstanding, both defendant and the People were ready for trial on the date of the plea (*see generally People v Rodriguez*, 50 NY2d 553, 557 [1980] ["the constitutional right to a speedy trial is one that may be surrendered"]).

Second, after the court informed the parties that the case would have to be adjourned to allow the People to respond to the writ, it was defense counsel who advised the court that defendant had asked him "to make further inquiry" regarding the People's offer. In response, it was the court, not the prosecutor, that informed defendant that it would accept the plea only on the condition that defendant withdraw "all motions that are outstanding."

Third, when defense counsel first advised the court that de-

fendant was not interested in the plea offer because he would not be immediately released, the court set an adjourned date and neither the court nor the prosecutor said anything designed to persuade defendant to change his mind and accept the plea offer. It was only after numerous pauses in the proceeding that defense counsel advised the court that, "after having had a number of conversations with [defendant] and . . . an opportunity to review the writs . . . as well as the motions," defendant had authorized him to enter a plea of guilty with the understanding that defendant would be receiving credit for time served and would waive his right to appeal and withdraw the outstanding writs or motions which counsel had adopted in the past.

Fourth, during the plea proceedings the court twice asked defendant if he understood that by taking the plea all of his outstanding writs and motions were being withdrawn. Defendant acknowledged that he understood and was withdrawing all prior writs and motions and that he had been given enough time to discuss the disposition with counsel and was satisfied with his representation. Defendant also confirmed that he understood that he was waiving certain trial rights and that he was pleading guilty because he was in fact guilty, that no one had forced him to plead guilty and that the only promise made to him was the sentencing promise.

Indeed, at the plea withdrawal hearing, defendant explained that he inquired into the plea offer because he felt pressure as a result of the delay that would result from allowing the People to respond to his writ. Although defendant testified that he was not made to understand that the writ had been granted and that he would not have pleaded guilty had he known that the court was requiring him to withdraw it, he admitted that he understood that the withdrawal of all motions encompassed his pending motion asserting a violation of his "constitutional right to a speedy trial." At no time did defendant testify that he was concerned about the withdrawal of his speedy trial motion. Rather, he complained only that he did not know that a plea could not be conditioned on the withdrawal of certain motions.

Given these circumstances, the court properly exercised its discretion in denying defendant's motion to vacate the plea on the ground that it was knowingly, intelligently and voluntarily entered (*People v Flemming*, 27 AD3d 257 [2006], *lv denied* 7 NY3d 755 [2006]).

We are cognizant that in *Blakley* and *Callahan*, the Court of Appeals went beyond *White*'s case-specific analysis, holding in *Blakley* that "[b]ecause the criminal justice system should

scrupulously avoid the possibility that a plea of guilty may be tainted by unfairness . . . , and because prosecutors should not be allowed to submerge speedy trial challenges, and the societal interests they represent, in plea bargains, . . . a reduced plea conditioned upon a waiver of a speedy trial claim must be vacated" (*Blakley*, 34 NY2d at 315; *see also Callahan*, 80 NY2d at 279-282). However, in *Blakley* and *Callahan* the right to appeal the constitutional speedy trial claim had matured in that the defendants had pleaded guilty after their speedy trial motions had been denied. Here, as in *White,* the appellate claim had not matured in that the speedy trial motion remained pending when the plea was entered.

Defendant argues that this distinction is irrelevant in that the *Blakley* rule has not been limited to those cases where the motion has been decided and that while a defendant can independently choose to abandon a speedy trial claim by his silence, a plea that is specifically conditioned on the withdrawal of a speedy trial claim is illegal per se. This argument is unpersuasive.

In *Blakley*, the court denied defendant's speedy trial motion even though his case did not come to trial until almost three years and one month after the indictment. On the second day of the trial, defendant pleaded guilty to a reduced plea, which the prosecutor conditioned upon defendant's withdrawal of his speedy trial claim. In considering defendant's challenge to the plea, the Court of Appeals stated: "The improper *denial* of a motion to dismiss the indictment on the grounds that the defendant has not been afforded a speedy trial survives a plea of guilty and may be raised on appeal. Here the *prosecutor* attempted, in effect, to deprive the defendant of his right to appeal the adverse determination of his speedy trial claim, by confronting him with a possibly unfair trial (because so tardy) on the one hand, and, on the other, offering him a reduced plea only if he would relinquish the speedy trial claim." (*Blakley*, 34 NY2d at 314 [citations omitted and emphasis added].)

Although *Blakley* held that a waiver of appeal is ineffective to the extent that it precludes appellate review of constitutional speedy trial claims and that such claims survive a guilty plea following the *denial* of a speedy trial motion, it is equally established that a properly interposed constitutional claim may be deemed abandoned or waived if not pursued (*see Rodriguez,* 50 NY2d at 557; *see also People v Denis*, 276 AD2d 237, 246-247 [2000], *lv denied* 96 NY2d 782 [2001]). Thus, in *Flemming* (27 AD3d 257 [2006]) and *People v Tatis-Duran* (300 AD2d 84 [2002]), this Court held that a defendant who pleaded guilty

*before* the court decided his constitutional speedy trial motion was foreclosed from pursuing the merits of his constitutional speedy trial claim on appeal.

In light of these principles, to accept defendant's interpretation and vacate his guilty plea would create the paradoxical result of allowing defendant to vacate his plea solely because the court, rather than remaining silent, advised him that all pending motions had to be withdrawn as a condition of his plea, even though defendant is barred from pursuing the merits of his speedy trial motion in this Court.* Indeed, taken to extremes, a per se interpretation of the *Blakley* rule might have absurd consequences. For example, as interpreted by defendant, *Blakley* would require vacatur of a guilty plea conditioned on the withdrawal of a speedy trial motion even in a situation where a defendant filed the motion the day after his indictment and then pleaded guilty the following day.

Lastly, defendant ignores the factual distinctions between *Blakley* and this case. In *Blakley*, it was the prosecutor who "attempted, in effect, to deprive the defendant of his right to appeal the adverse determination of his speedy trial claim" (*Blakley* at 314), by giving him the choice of accepting a plea conditioned on the waiver of his speedy trial claim or proceeding to a trial that would be rendered unfair by the three-year delay. Here, the alleged delay was approximately 13 months, defendant was ready to proceed to trial on the plea date despite the pendency of his speedy trial motion, defendant raised the plea offer only because he felt pressured by the fact the trial was going to be further delayed due to his writ, and, in response to defendant's inquiry about the plea, it was an impartial judge who raised the condition that defendant waive all pending motions and ensured that defendant understood and agreed to all of the terms of the plea offer (*see Ocasio v Walker*, 2004 WL 1516789, *5, 2004 US Dist LEXIS 12500, *15-17 [SD NY 2004]). Concur—Andrias, J.P., Moskowitz, Freedman and Román, JJ.

McGuire, J., concurs in a separate memorandum as follows: A central issue in this appeal is whether *People v White* (32 NY2d 393 [1973]) remains good law in light of *People v Blakley* (34 NY2d 311 [1974]) and *People v Callahan* (80 NY2d 273 [1992]).

---

* Of course, if there was a basis to hold that defendant's speedy trial claim was reviewable even though the motion was not decided, as the Court of Appeals did in *White*, this case would not run afoul of *Blakley* and *Callahan* because defendant, in his written waiver of appeal, expressly reserved his right to appeal "any constitutional speedy trial claim which [he] may have advanced." In this regard, we note that defendant has not asked that we consider the merits of his constitutional speedy trial claim.

Although that issue is not one that commonly turns up, it is one the Court of Appeals should address.

In *People v Blakley*, the defendant pleaded guilty to a reduced charge after his motion to dismiss on constitutional speedy trial grounds had been denied. The Court vacated the plea, concluding that "[f]or a variety of reasons, a prosecutor must not make the right to a speedy trial an item of barter in a plea bargaining situation" (34 NY2d at 314). The Court viewed conditioning a plea to a reduced charge on the withdrawal of a constitutional speedy trial claim as "inherently coercive" (*id*. at 313); its broad rationale was: "It is possible that an innocent defendant, faced with a trial that is unfair because unreasonably delayed, may plead guilty to a reduced charge rather than risk such a trial. Because the criminal justice system should scrupulously avoid the possibility that a plea of guilty may be tainted by unfairness . . . , and because prosecutors should not be allowed to submerge speedy trial challenges, and the societal interests they represent, in plea bargains, we hold that a reduced plea conditioned upon a waiver of a speedy trial claim must be vacated. (Cf. *People v. White*, 32 NY2d 393.) And this result follows regardless of the defendant's success on the underlying speedy trial claim" (*id*. at 315). Of course, this case is distinguishable on its facts as the court had not ruled on the merits of the speedy trial motion when defendant pleaded guilty. The issue in this case is whether defendant's plea to a reduced charge is for that reason not subject to the per se vacatur holding of *Blakley*. Notably, in adopting the per se vacatur rule, the Court cited only its decision the year before in *People v White*, and prefaced the citation with the signal, "*cf.*"

*People v White* does not expressly address that issue. In *White*, the defendant's motion to dismiss on constitutional speedy trial grounds had not been decided prior to his plea of guilty to a reduced charge. Critically, however, the Court did not, as it later did in *Blakley*, vacate the plea before determining whether it had been coerced. Although the Court held that the defendant had been coerced into waiving his right to a speedy trial and pleading guilty, the case seems to turn on its particular facts. After all, the coercive character of those facts is stressed in the opinion and no broad rationale is stated (*see also Callahan*, 80 NY2d at 282 [noting "*White's* case-specific analysis"]). Nor is there any reliance on the societal interest in a speedy trial, one of the factors informing the Court's decision in *Blakley*. To the contrary, the opinion states a broad principle of law—"[a] defendant may, of course, waive his right to a speedy trial" (32 NY2d at 399)—that, as is clear from *People v Seaberg* (74 NY2d

1, 9 [1989]), is no longer valid in some contexts. Consistent with the fact-specific analysis in *White*, the majority stresses the noncoercive character of the circumstances surrounding defendant's guilty plea.

*People v Rodriguez* (50 NY2d 553 [1980]), another case in which the trial court did not rule on the merits of a motion to dismiss on constitutional speedy trial grounds, is not a guilty plea case but is relevant nonetheless if only because it is discussed in *People v Callahan*. The trial court directed a hearing on the motion, but "[f]or reasons undisclosed by the record, no speedy trial hearing was held" (50 NY2d at 556). Although the motion remained undecided, the parties proceeded to trial and the defendant was convicted. On appeal, he sought to press his claim that his right to a speedy trial had been violated. Concluding that the record "figuratively shouts out the knowing nature of the decision to abandon the speedy trial claim" (*id.* at 557), the Court held that the defendant's "objection to the tardiness of the prosecution . . . had been knowingly and voluntarily abandoned" (*id.* at 558).

In *People v Callahan*, as in *Blakley*, the defendant pleaded guilty after the court had denied his motion to dismiss on constitutional speedy trial grounds (80 NY2d at 278). Presumably, he pleaded guilty to a reduced charge, but the opinion states only that he pleaded guilty to a charge in full satisfaction of the indictment (*id.*). Brushing aside the notion that *Rodriguez* undermined the continuing validity of *Blakley*, the Court reaffirmed *Blakley*, stating that it "went beyond *White's* case-specific analysis and held that 'the nature of the speedy trial guarantee renders a [waiver of such a claim] *inherently* coercive in a plea bargaining situation,' so that a plea conditioned on a waiver 'must be vacated' regardless of the substantive merits of the claim (*id.* at 282, quoting *Blakley*, 34 NY2d at 313). Invoking anew the societal interest in a speedy trial, the Court stated that *Blakley*'s continuing validity was evident from *Seaberg*, where that interest was stressed (*id.*). The Court also went on to make clear that *Rodriguez* should not be interpreted broadly, stating that "*Rodriguez* stands only for the limited proposition that a defendant who initially interposes a constitutional speedy trial claim but subsequently abandons it before a determination on the claim is made cannot subsequently raise that claim on appeal" (80 NY2d at 282).*

---

* The Court did not mention the per se vacatur rule of *Blakley*, pursuant to which the guilty plea is vacated and then the merits of the constitutional speedy trial claim are reviewed. But there is no inconsistency with *Blakley* in

Defendant argues that although his constitutional speedy trial motion had not been denied prior to his guilty plea, the per se vacatur rule of *Blakley* applies, not the case-specific approach of *White*, because *White* was supplanted, i.e., overruled, by *Blakley*. Neither in *Blakley* nor in *Callahan*, however, did the Court state that it was overruling *White* or disapproving its case-specific analysis. To the contrary, when the Court in *Blakley* cited *White*, it used the *"cf."* rather than the *"but see"* signal. And the statement in *Callahan* that *Blakley* "went beyond" *White*'s case-specific approach would be too coy and too casual a way of overruling a precedent.

That said, why the case-specific approach of *White* should apply when a constitutional speedy trial motion has been made but not decided is not obvious. It cannot be said, however, that the factual situation in this case and *White* always must be as inherently coercive as the situation in *Blakley*. Where, as here, the prosecution has not responded to the speedy trial motion, the prosecutor responsible for the case may not even have read it. Of course, that will not invariably be true and, even when it is, the prosecutor still may have good reason to think the motion is a formidable one. The point, however, is that when cases in which the motion has been responded to are compared to cases in which there has been no response, it is not unreasonable to think that the latter class of cases presents a reduced danger that the offer of a plea to a reduced charge represents a coercive effort by the prosecutor to "make the right to a speedy trial an item of barter" (*Blakley*, 34 NY2d at 314). Moreover, there is a good reason to be chary about extending the per se vacatur rule of *Blakley*. Plea bargaining, of course, benefits both persons charged with crimes and societal interests (*People v Selikoff*, 35 NY2d 227, 232-234 [1974], *cert denied* 419 US 1122 [1975]). However, those benefits do not come without costs. If the per se vacatur rule of *Blakley* applies as soon as a constitutional speedy trial motion is made, prosecutors will have powerful incentives not to permit any reduced pleas until after the motion is decided, even if the motion is frivolous or the prosecutor had been planning to offer a favorable plea bargain before

this regard; the record on appeal makes clear that the defendant did not ask that the plea be vacated (brief for defendant-appellant at 7, 12; *People v Callahan*, 80 NY2d 273 [1992]). In *People v Flemming* (27 AD3d 257 [2006]) and *People v Tatis-Duran* (300 AD2d 84 [2002]) we held that a defendant who pleaded guilty to a reduced charge before his constitutional speedy trial claim was decided could not obtain review of that claim. In *Flemming*, vacatur of the guilty plea was not sought and in *Tatis-Duran* there was no claim that the plea was involuntary (brief for defendant-appellant Flemming at 22; brief for defendant-appellant Tatis-Duran at unnumbered page 4).

the motion was made. After all, the defendant would have the unilateral right to undo any plea of guilty, perhaps years later when the prosecution's case could be compromised, by filing an appeal or making a post-conviction motion and invoking the vacatur rule.

Defendant argues that extending the per se vacatur rule to this case would not require "vacat[ur] of all pleas, even those entered into voluntarily very early in a criminal case, where there was a pending constitutional speedy trial motion at the time of the guilty plea." The "critical" consideration in this case, he maintains, is that his plea to a reduced charge was "specifically conditioned on the withdrawal of his speedy trial claim." This argument is unpersuasive because it entails the proposition that an otherwise identically situated defendant is not entitled to vacatur of a guilty plea or any other relief if no one, not the court, the prosecutor or defense counsel, makes any mention of a pending constitutional speedy trial motion. In that situation, the speedy trial claim would be waived by operation of law and the defendant would be entitled to no relief. A different result should not obtain merely because of on-the-record efforts by the court, the prosecutor or defense counsel to confirm or make clear to the defendant that the plea of guilty effectively waives the undecided constitutional speedy trial motion.

For these reasons, I agree with the majority that the case-specific analysis of *White* is applicable and that, because of the noncoercive circumstances of the plea, defendant is not entitled to vacatur of the plea.